IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02086-EWN-KMT

STEVEN LEE SWALLOW,

    Plaintiff,
v.

P. BAKER,
G.L. CLARK,
R. DERR,
MICHAEL K. NALLEY,
T. QUINTANA,
RICHARD SCHOTT,
HARRELL WATTS,
J.C. ZUERCHER,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case involves a claim that Defendants violated Plaintiff's statutory and constitutional rights. This matter is before the court on "Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6)" (Doc. No. 42) filed February 12, 2008, and "Defendant Clark's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 66) filed May 12, 2008. Jurisdiction is premised upon 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and 42 U.S.C. § 1985(3).

**STATEMENT OF THE CASE**

The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff Steven Lee Swallow is incarcerated in the Federal Correctional Institution ("FCI") in Florence, Colorado. (Prisoner Compl. at 2 [hereinafter "Compl."] [filed October 16, 2007].) Plaintiff has named as defendants P. Baker, Case Manager at FCI; G.L. Clark, Unit Manager at FCI; R. Derr, Unit Manager at FCI; Michael K. Nalley, Regional Director for the North Central Regional Office of the Bureau of Prisons ("BOP"); T. Quintana, Counselor at FCI; Richard Schott, Regional Counsel for BOP; Harrell Watts, Administrator of National Inmate Appeals of the BOP; and J.C. Zuercher, former Warden at FCI. (*Id.* at 2–4.) Plaintiff asserts Defendants violated his federal treaty or statutory rights under Article VI, Clause 2, of the Constitution, and his Fifth Amendment property rights. (*Id.* at 5.) Plaintiff asserts three claims.

In Claim One, Plaintiff alleges "Violation of Treaty and Statutory Rights." (*Id.* at 6.) Plaintiff states he is a Native American and member of the Eastern Shoshone Tribe of Wyoming, which has rights to funds and revenue from the Wind River Reservation under Title 25 U.S.C. §§ 611–613. (*Id.* ¶¶ 1–3.) Plaintiff asserts revenue payments under § 613 are not subject to any lien or claim of any nature against any members of the tribe unless the business counsel gives written consent. (*Id.* ¶ 4.) Plaintiff alleges shortly after his arrival at FCI, he was required to attend a meeting conducted by Defendants Baker and Clark, during which Defendants advised Plaintiff he had to pay more money towards his Financial Responsibility Program ("FRP"). (*Id.* ¶¶ 7, 10.) Plaintiff states he advised Defendants Baker and Clark that his per capita payments

2

could not be counted in his FRP.  (*Id.* ¶ 11.)  Plaintiff states he "reluctantly signed for $200" to be taken out of his account.  (*Id.* ¶ 14.)  Plaintiff asserts when a second FRP payment in the amount of $200 was taken out of his account, "he realized he was being forced to pay $200 per <u>month</u> and felt he had been tricked out of his per capita payments."  (*Id.* ¶ 20.)  Plaintiff asserts his average monthly income at FCI does not justify FRP payments of $200 per month.  (*Id.* ¶ 21.)  Plaintiff alleges he told Defendant Baker he wanted his FRP payments reduced to $25 per quarter and showed the defendant a copy of the statutory authority regarding his treaty funds.  (*Id.* ¶ 22.)  According to Plaintiff, Defendant Baker told Plaintiff that congressional acts do not apply to the FRP, but more $200 FRP payments were taken from his account.  (*Id.* ¶ 23, 25.)

In Claim Two, Plaintiff alleges "Taking of Property Without Due Process."  (*Id.* at 9.)  Plaintiff states after the additional $200 FRP payments were taken out of his account, and after he was offered a new contract of $180 per month, he advised Defendants Baker and Quintana of the law and "the Government's obligations towards Indians, then reasserted his request for payments of $25 per quarter."  (*Id.* ¶¶ 26–30.)  Plaintiff alleges Defendant Baker told Plaintiff he could not participate in the FRP at that level, and Defendants Baker and Quintana stated they were allowed to administer the FRP as they chose, but they refused to explain the authority for their actions or answer Plaintiff's questions.  (*Id.* ¶¶ 31, 33.)  Plaintiff states he refused to sign the new contract for $180 FRP payments.  (*Id.* ¶ 34.)  Plaintiff states he submitted to Defendant Quintana a Request for Administrative Remedy, to which Defendant Zuercher responded without addressing the issue of Native American treaty rights or the "BOP's lack of discretion to modify court ordered restitution."  (*Id.* ¶ 35–36.)  Plaintiff asserts Defendant Zuercher failed to

3

conduct an adequate review and investigation. (*Id.* ¶ 37.) Plaintiff further asserts Defendant Zuercher "personally took an official step to conceal the wrongdoing of this staff." (*Id.* ¶ 38.) After another $200 FRP payment was taken out of Plaintiff's account, Plaintiff filed a Regional Administrative Remedy Appeal. (*Id.* ¶¶ 39–40.) Plaintiff asserts that Defendant Nalley responded to the Regional Administrative Remedy Appeal, advising Plaintiff that the BOP has the discretion to change restitution payments ordered by the courts. (*Id.* ¶ 43.) Plaintiff asserts Defendant Nalley had a duty to investigate the facts and the power to correct the violations, but that he "personally took an official step to conceal the wrongdoings." (*Id.* ¶ 44.) Plaintiff asserts Defendant Clark threatened that Plaintiff would be sent back to the USP-Florence, a maximum security facility, if he did not continue paying. (*Id.* ¶¶ 46–47.) Plaintiff states he filed another Central Office Administrative Remedy Appeal, but the $200 FRP payments continued to be taken from his account. (*Id.* ¶¶ 48–51.) Plaintiff asserts he was required to attend another meeting conducted by Defendants Baker and Clark, in which Defendant Baker instructed Plaintiff to sign another $200 per month FRP contract and threatened Plaintiff with a disciplinary report if he refused to sign. (*Id.* ¶¶ 52–54.) Plaintiff states he "volunteered" to participate in the FRP at $25 per quarter, and Defendants Baker and Clark told Plaintiff he was being "put on refusal." (*Id.* ¶¶ 55, 57.) Plaintiff states on September 29, 2006, Defendant Watts responded to the Central Office Administrative Remedy Appeal, "misstated plaintiff's issue, then failed to review the applicable statutes and case law relevant to Indians and treaty funds." (*Id.* ¶ 60.) Plaintiff asserts Defendant Watts had a duty to investigate the facts and the power to correct the violations, but that he "personally took an official step to conceal the wrongdoing." (*Id.* ¶ 63.)

On October 23, 2006, Plaintiff filed a BOP federal tort claim to recover the money taken from his account, but on March 26, 2007, Defendant Schott denied the claim, stating Plaintiff did not lose any personal property as a result of the actions of BOP employees. (*Id*. ¶¶ 64–65.) Plaintiff asserts Defendant Schott had a duty to investigate the facts and the power to redress the violations, but that he "personally took an official step to conceal the wrongdoing." (*Id.* ¶ 66.)

In Claim Three, Plaintiff alleges "Conspiracy to Deprive Plaintiff of Rights and Privileges." (*Id.* at 13.) Plaintiff states on May 1, 2007, he sent an Inmate Request to Staff to Defendant Zuercher requesting to participate in the FRP at $25 per quarter. (*Id.* ¶ 67.) Defendant Zuercher forwarded the request to Defendant Derr, who supervises Defendants Baker and Quintana. (*Id.* ¶¶ 68–69.) Defendant Derr refused Plaintiff's request. (*Id.* ¶ 70.) Plaintiff asserts FCI has instituted a policy of forcing inmates to raise their FRP payments, a pattern and practice of threatening inmates with sanctions if they do not sign a higher FRP contract. (*Id.* ¶¶ 73–74.) Plaintiff states inmates who do not sign a higher contract are placed on "refusal" status, making their incarceration more "austere" than the general population. (*Id.* ¶¶ 76–77.) Plaintiff alleges Defendants Baker and Clark conspired to deprive Plaintiff of his property, and to violate the treaty as well as Plaintiff's statutory and equal protection rights. (*Id.* ¶ 83.) Plaintiff states by placing him on "refusal" status, the BOP "has gone from collecting money [ ] to <u>not</u> collecting any money, solely to punish a plaintiff who asserts his rights and refuses to be extorted." (*Id.* ¶ 92.)

Plaintiff seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages. (*Id.* at 17–19.)

Defendants have filed their motions to dismiss on the bases that (1) this court lacks personal jurisdiction over Defendants Nalley, Schott, and Watts; (2) Plaintiff does not a state a claim in Claims One, Two, or Three; and (3) Defendants are entitled to qualified immunity. (Defs.' Mot. to Dismiss Pl.'s Compl. Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) [hereinafter "Mot."] [filed February 12, 2008]; Def. Clark's Mot. to Dismiss Pl.'s Compl, Pursuant to Fed. R. Civ. P. 12(b)(6) [hereinafter "Clark's Mot."] [filed May 12, 2008].)

## PROCEDURAL HISTORY

Plaintiff's Prisoner Complaint was filed on October 16, 2007. (Compl.) Defendants Baker, Derr, Nalley, Quintana, Schott, Watts, and Zuercher filed their motion to dismiss on February 12, 2008. (Mot.) Plaintiff filed his response on March 10, 2008. (Pl.'s Objections to Defs.' Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) [hereinafter "Resp. to Mot."].) Defendants filed their reply on April 17, 2008. (Defs.' Reply in Supp. of Mot. To Dismiss Compl. [hereinafter "Defs.' Reply"].)

Defendant Clark filed his motion to dismiss on May 12, 2008. (Clark's Mot.) Plaintiff filed his response on June 13, 2008. (Pl.'s Supplemental Reply in Opp'n to Defs. Mot. to Dismiss [hereinafter "Resp. to Clark's Mot."].) Defendant Clark filed his reply on June 30, 2008. (Def. Clark's Reply in Supp. of Mot. to Dismiss Compl. [hereinafter "Clark's Reply"].) These motions are ripe for review and recommendation.

**STANDARD OF REVIEW**

*1.* **Pro Se** *Plaintiff*

Because Plaintiff appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

*2.* *Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint "for lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction over Defendants. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, Plaintiff's

burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits.'" *Wenz*, 55 F.3d at 1505 (*quoting Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiff's favor, and "[P]laintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pled facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this

state." Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2007). To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

### *3.    Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

Thus, all well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), the Supreme Court articulated a

9

new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *(overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

## ANALYSIS

### 1. *Personal Jurisdiction*

Defendants Nalley, Schott, and Watts contend that this court lacks personal jurisdiction over them. As described in the Complaint, Defendant Nalley is the Regional Director for the North Central Regional Office of the BOP, whose office is in Kansas City, Kansas; Defendant Schott is the Regional Counsel for the BOP, who also offices in Kansas City, Kansas; and Defendant Watts is the Administrator of National Inmate Appeals of the BOP, whose office is in Washington, D.C.. (Compl. at 3.) All three defendants contend that the court lacks personal jurisdiction over them because they do not reside in Colorado and have not purposefully availed themselves of the privilege of conducting activities in Colorado. (Mot. at 6.) In a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295

(10th Cir. 1999); *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

Whether this court has personal jurisdiction over a defendant requires a two-pronged inquiry: (1) whether the defendant would be subject to the jurisdiction of a court of general jurisdiction in the State of Colorado; and (2) whether the exercise of personal jurisdiction over the defendant would offend the Due Process clause of the Fourteenth Amendment. *U.S. v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002). Colorado state law permits the exercise of personal jurisdiction to the extent consistent with the United States Constitution. *Brownlow v. Aman*, 740 F.2d 1476, 1481 (10th Cir. 1984). Thus, the two-pronged analysis collapses into a single inquiry as to whether the exercise of personal jurisdiction over these defendants offends due process. *Botefuhr*, 309 F.3d at 1271. To satisfy the Due Process clause, the defendant over whom personal jurisdiction is sought must have sufficient minimal contacts with the State of Colorado such that it can be said that he has "purposefully availed" himself of the protection and benefits of the laws of Colorado. *Botefuhr*, 309 F.3d at 1272.

Plaintiff contends that Defendant Nalley responded to a Regional Administrative Remedy Appeal, that Defendant Watts responded to the Central Office Administrative Remedy Appeal, and that Defendant Schott denied a BOP federal tort claim filed by Plaintiff. (Compl. ¶¶ 43, 60, 65.) In his response to the motion to dismiss, Plaintiff states Defendants "have had numerous--if not hundred--[ ] occasions where they purposefully directed their activities at residents of Colorado." (Resp. to Mot. at 3.) Plaintiff further contends that inmates in Colorado are directed by local authorities to solicit the involvement of these particular defendants in remedying their

11

rights. (*Id.*) Plaintiff's statements regarding the extent of Defendants' contacts with Colorado is insufficient to carry his burden of establishing that they purposefully availed themselves of the benefits of Colorado's laws. Plaintiff contends the contacts were not random, fortuitous or attenuated. (*Id.*) This court disagrees. The contacts of Defendants Nalley, Schott, and Watts with Colorado are completely fortuitous, resulting from the fact that the Plaintiff — to whom they were responding when answering grievances — was located in Colorado. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Plaintiff's conclusory assertions that Defendants Nalley, Schott, and Watts have purposefully directed their activities at residents of Colorado on hundreds of occasion is mere speculation. Accordingly, this court finds that Plaintiff has not established that it has personal jurisdiction over Defendants Nalley, Schott, and Watts. *Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."); *Durham v. Lappin*, No. 05–cv–01282–MSK–MEH, 2006 WL 2724091, at *4–5 (D. Colo. Sept. 21, 2006) (*Hale v. Ashcroft*, No. 06–cv–00541–REB–KLM, 2007 WL 2350150, a *3 (D. Colo. Aug. 15, 2007).

Accordingly, Plaintiff's claims against Defendants Nalley, Schott, and Watts are properly dismissed for lack of personal jurisdiction.

2.  ***Claim One***

In Claim One, Plaintiff alleges "Violation of Treaty and Statutory Rights." (Compl. at 6.) Defendants assert that Plaintiff has failed to state a claim for relief in Claim One. (Mot. at 9.) First, Defendants assert that Claim One is based on a statutory violation, rather than a

constitutional violation. (*Id.*) *Bivens* claims allow plaintiffs to recover from individual federal agents for constitutional violations the agents commit against plaintiffs. *Bivens*, 403 U.S. at 396–97; *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). Plaintiff has failed to allege <u>any</u> constitutional violation in Claim One. Therefore, to the extent Plaintiff is seeking relief under *Bivens* for Claim One, the claim should be dismissed.

Second, Defendants assert that no statutory violation occurred. (Mot. at 9.) 28 U.S.C. § 612 authorizes the Secretary of the Treasury, at the request of the Secretary of the Interior, to create a trust fund for the Shoshone Tribe and the Arapahoe Tribe of the Wind River Reservation. 28 U.S.C. § 612 (2007). Section 611 directs the Secretary of the Interior how to manage the trusts. *Id.* at § 611. Section 613 provides, in relevant part:

> 85 per centum of said trust funds shall be paid per capita to the members of the respective tribes in equal monthly installments on the first day of each month . . . [S]aid per capita payments shall not be subject to any lien or claim of any nature against any of the members of said tribes. . . .

*Id.* at § 613.

Plaintiff asserts that Defendants are violating the statute because of the language exempting per capita payments from being subject to liens or claims against any tribal members. (Compl. at 6–8.) However, in determining whether per capita payments made to minor tribal members are exempted by federal statute from consideration in determining the extent of a minor's resources, the Interior Board of Indian Appeals determined in *Shoshone & Arapahoe Tribes v. Comm'r of Indian Affairs*, 89 Interior Dec. 200, 204, 9 IBEA 263, 1982 WL 178225, at **1, 3 (Apr. 16, 1982), that the interpretation made by Plaintiff "strains credulity upon

13

recognition of the fact . . . that once per capita payments are received by adult members of the tribes, the monies are not regarded as trust personalty." *Id.* In reviewing the legislative history, the Interior Board of Indian Appeals found as follows:

> [T]he [exemption] proviso was not intended to exempt per capita payments from legitimate debts owed by an individual. The restriction was enacted to guarantee that the individual would receive the full per capita payment so that he . . . could take care of his . . . own debts, like any other responsible citizen, free from restrictions imposed by the Bureau. . . .[T]he proviso is seen to protect the initial payment owing to an individual, but not to restrict the use of money once the payment was made.

*Shoshone & Arapahoe Tribes*, 89 Interior Dec. at 205–06. Therefore, once a tribe member has received per capita payments, the funds are no longer regarded as trust property and no longer exempt from any lien or claim; thus, Defendants did not violate the statute. Accordingly, as Plaintiff has not asserted a Constitutional claim in Claim One, and no treaty or statutory rights were violated by Defendants, Plaintiff's Claim One is properly dismissed with prejudice for failure to state a claim upon which relief can be granted.

### 3. *Claim Two*

In Claim Two, Plaintiff alleges "Taking of Property Without Due Process." (Compl. at 9.) Defendants assert that Plaintiff has failed to state a plausible claim in Claim Two. (Mot. at 11.) It is unclear whether Plaintiff is asserting a takings claim under the Fifth Amendment or a procedural due process claim under the Fifth Amendment. (Compl. at 9–12.) The Takings Clause of the Fifth Amendment provides private property shall not be taken for public use without just compensation. U.S. Const. amend. V. "A party challenging governmental action as an unconstitutional taking 'bears a substantial burden.'" *Pittsburg County Rural Water Dist. No.*

7 v. City of McAlester*, 358 F.3d 694, 718 (10th Cir. 2004) (quoting *Eastern Enters. v. Apfel*, 524 U.S. 498, 523 (1998)). To evaluate the constitutionality of a government action, the court evaluates the "justice and fairness of the governmental action." *Id.* The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. amend. V. Plaintiff bears the burden of establishing a procedural due process violation. "A person alleging that he has been deprived of his right to procedural due process must prove (1) that he possessed a constitutionally protected liberty or property interest such that the due process protections were applicable, and (2) that he was not afforded an appropriate level of process." *Zwygart v. Bd. of County Comm'rs*, 483 F.3d 1086, 1093 (10th Cir. 2007) (internal quotations omitted). For federal prisoners, a liberty or property interest exists only where an interference with that interest would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Steffey v. Orman*, 461 F.3d 1218, 1221–22 (10th Cir. 2006).

Defendants state that Plaintiff has not asserted that the FRP is unconstitutional or that he has a constitutionally protected interest. (Mot. at 12.) In addition, Defendants aver Plaintiff has not alleged that he is unable to pay $200 per month, or that Defendants intend to charge him more than he can pay. (*Id.*) This court agrees. Plaintiff, in his response, states that his second claim is based on his refusal to sign a contract, and Defendants' persistence in taking the FRP funds without authorization. (Resp. at 12.) However, Plaintiff states otherwise in his Complaint. Plaintiff asserts he <u>did</u> sign a contract but realized later he had been "tricked" into signing it. (Compl. at 14, 20.) Plaintiff acknowledges he did file grievances and did receive responses.

15

However, Plaintiff does not agree with the responses.  Even if this court could construe a constitutionally protected interest, Plaintiff has failed to assert that he was denied <u>any</u> due process.  Finally, Plaintiff has failed to show how the taking of his account funds places a atypical and significant hardship on him in relation to the ordinary incidents of prison life.

Therefore, Plaintiff's allegations are not sufficient to state a Fifth Amendment takings or procedural due process claim, and Claim Two is properly dismissed with prejudice.

*4.     Claim Three*

In Claim Three, Plaintiff alleges "Conspiracy to Deprive Plaintiff of Rights and Privileges." (Compl. at 13.)  Defendants assert that Plaintiff has failed to state a plausible claim in Claim Three because he has not alleged a constitutionally protected right that has been deprived.  (Mot. at 13–14.)

Allegations of conspiracy may form the basis of a § 1983 claim.  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants.  *Id.*  "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." *Id.* (quotation omitted).

Plaintiff's Claim Three is devoid of <u>any</u> specific facts showing an agreement and concerted action amongst the defendants.  Plaintiff makes only conclusory statements, such as: "defendants Baker and Quintana conspired to deprive plaintiff of his property, rights, and equal protection," "defendant Zuercher . . . took affirmative steps to conceal the wrongdoing, thereby joining the conspiracy," and "Defendant Derr joined the Unit Team conspiracy by again refusing

16

plaintiff's request to voluntarily participate in the FRP." (Compl. ¶¶ 83, 85, 93.) These statements are insufficient to state a § 1983 claim.

Therefore, Plaintiff's Claim Three is properly dismissed with prejudice for failure to state a claim upon which relief can be granted.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS "Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6)" (Doc. No. 42) and "Defendant Clark's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 66) be GRANTED, and this case be dismissed in its entirety, with prejudice, as follows:

1. Plaintiff's claims against Defendants Nalley, Schott, and Watts should be dismissed for lack of personal jurisdiction;

2. Plaintiff's claims should be dismissed for failure to state claims upon which relief can be granted.

**ADVISEMENT TO THE PARTIES**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the

district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d

1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 27th day of August, 2008.

**BY THE COURT:**

_____
Kathleen M. Tafoya
United States Magistrate Judge